# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**No. 25-30624**

---

**Poor Boy Tree Service, Incorporated and**
**Mobile Help 4U, Incorporated.**
**Plaintiffs/Appellants**

**v.**

**City of Winnfield,**
**Defendant/Appellee**

---

## On Appeal from

**United States District Court for the Western District of Louisiana**
**Civil Action Number 1:22-cv-02199**

**The Honorable Judge Jerry Edwards, Jr., Presiding**

---

**BRIEF OF PLAINTIFFS/APPELLANTS,**
**POOR BOY TREE SERVICES, INC. AND MOBILE HELP 4U, INC.**

**Respectfully Submitted,**

**LAW OFFICES OF CHRIS BOWMAN**
**330 East Main Street**
**Post Office Box 190**
**Jonesboro, LA 71251**
**T: 318-259-6200 / F: 318-259-7389**
**E: colby@bowman.law**
**Colby L. Bowman, #37045**

**CHRISTIANSEN LAW FIRM**
**2483 Tower Drive, Suite 2**
**Monroe, LA 71201**
**T: 318-807-0929 / F: 318-809-0926**
**E: jpchris@christiansenlawfirm.net**
**Jan P. Christiansen, #20142**

**Attorneys for Plaintiffs/Appellants,**
**Poor Boy Tree Services, Inc. and Mobile Help 4U, Inc.**

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fed. R. App. 26.1 and 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. Plaintiffs/Appellants, Poor Boy Tree Services, Inc. and Mobile Help 4U, Inc..
2. Defendant-Appellee, City of Winnfield, Louisiana.
3. Joshua L. Dara, Jr., Steven M. Oxenhandler, R. Morgan Briggs, and Connor C. Headrick of the law firm of Gold, Weems, Bruser, Sues & Rundell, Counsel for Defendant/Appellee, City of Winnfield, Louisiana.
4. Jan P. Christiansen of Christiansen Law Firm, Counsel for Plaintiffs/Appellants, Poor Boy Tree Services, Inc., et al and Mobile Help 4 U, Inc.
5. Chris Bowman and Colby L. Bowman, Law Offices of Chris Bowman, Counsel for Plaintiffs/Appellants, Poor Boy Tree Services, Inc., et al and Mobile Help 4 U, Inc.

***/s/ Jan P. Christiansen***
***/s/ Colby L. Bowman***

______________________________
Attorney of record for
Plaintiffs/Appellants,
Poor Boy Tree Services, Inc. and
Mobile Help 4U, Inc.

## STATEMENT REGARDING ORAL ARGUMENTS

The plaintiffs/appellants believe that oral argument would be helpful to the Court to discuss the issues raised in this matter.

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................ iii

Statement Regarding Oral Arguments ....................................................................iv

Table of Contents ......................................................................................................v

Table of Authorities .................................................................................................vi

I. Statement of Jurisdiction ..................................................................................1

A. Subject Matter Jurisdiction ........................................................................1

B. Appellate Jurisdiction.................................................................................1

C. Filing Dates ………………………………………………………...1

D. Assertion of Final Judgment ……………………………………….....1

II. Statement of Issues Presented for Appellate Review ......................................2

III. Statement of the Case .......................................................................................2

IV. Summary of Argument .....................................................................................5

V. Argument ..........................................................................................................6

A. Standard of Review for FRCP 12(b)(6) ....................................................6

B. The City of Winnfield Breached its contract ............................................7

C. Unjust Enrichment is a valid theory of recovery ....................................17

VI. Conclusion and Relief Sought ......................................................................22

VII. Certificate of Service .....................................................................................25

VIII. Certificate of Compliance..............................................................................26

# TABLE OF AUTHORITIES

## STATUTES

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1332 .......... 1

La. R.S. 29:724(D)(l) .......... 9

La. R.S. 39:1551 .......... 9

La. R.S. 38:2211 .......... 9

La. R.S. 38:2212 .......... 9, 13

La. R. S. 29:737 .......... 11

La. Civ. Code. Art. 2298 .......... 17, 18

Fed. R. Civ. P. 56(a) .......... 5

Fed. R. Civ. P. 15. .......... 17

## CASES

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986)* .......... 6

*Bell v. City of Lake Charles* 218 So.3d. 190 (La. App 3 Cir. 4/19/17) .......... 13

*Cambridge Toxicology Group v Exnicios,* 495 F.3d 169 (5th Cir. 2007) .......... 15

*Daspit v. City of Alexandria* 342 So. 2d 683 (La. App. 3d Cir. 1977) .......... 13

*Ford v. McKesson,* 2026 U.S. App. LEXIS 8179, *7-8, 2026 LX 184163, __ F.4th __, 2026 WL 772357 .......... 7

*Frechette v. Health Recovery Servs., Inc.*, 2024 U.S. Dist. LEXIS 50371, at *I (S.D. Ohio Mar. 21, 2024). .......... 21

*Gilstrap v. Cross Realty, Inc*., 2025 La. App. LEXIS 2547, (La. App. 5 Cir. 12/23/2025). ....................................................................................................19

*Kovalic v. DEC Int'l, Inc*., 855 F.2d 471, 473 (7th Cir. 1988)……………………….21

*Precision Cooling Towers Inc. v. Indorama Ventures,* 2022 U.S. Dist. Lexis 66341 ......................................................................................................................15

*Smith v. Reg'l Transit Auth.* 827 F.3d 412, 417 (5th Cir. 2016). ..............................6

*Smith v. Vinton,* 20 La. 587 (1946). .......................................................................11

*Sunray Servs., Inc. V. City of Minden,* 690 So. 2d 970 (La. App. 2 Cir. 2/28/1997*)* ......................................................................................................................12

*Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149, 153 (5th Cir. 2024).........6

# I. STATEMENT OF JURISDICTION

## A. Subject Matter Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction over this matter pursuant to 28 USC 1332 in that complete diversity exists between the parties and the amount in controversy exceeded $75,000. The district court entered final judgment, and Plaintiffs timely filed a notice of appeal.

## B. Appellate Jurisdiction

The jurisdiction of this Court lies under Article III of the United States Constitution and 28 USC § 1291 from a judgment granting Appellee City of Winnfield's Motion for Summary Judgment against Poor Boy Tree Service and Mobile Help 4U.

## C. Filing Dates

The Judgment in his matter was entered by the trial court on September 29, 2025 and the Notice of Appeal was filed by the plaintiffs on October 27, 2025. A briefing notice was given of March 16, 2026. Thereafter, a level 1 extension was granted to April 6, 2026.

## D. Assertion of Final Judgment

This appeal is from a Final Judgment (Doc. 60) that disposes of all parties claims in this matter.

## II. STATEMENT OF ISSUES PRESENTED FOR APPELLATE REVIEW

1. Whether the district court erred in granting summary judgment where genuine disputes of material fact exist.
2. Whether the court improperly resolved factual disputes regarding contract formation and authority.
3. Whether the district court erred in granting summary judgment and dismissing claims for unjust enrichment after the court ruled that the defendant did not have a cause of action for breach of contract.

## III. STATEMENT OF THE CASE

In August of 2020, the City of Winnfield was struck by an unprecedented storm that caused widespread damage in both Winn Parish and the State of Louisiana. Originally expected to be of tropical storm strength or less as far inland as Winnfield, which is located in the north central part of the state, Hurricane Laura was still at hurricane strength upon impact in Winn Parish. Anticipating the impending storm, Governor John Bel Edwards issued a Proclamation of a State of emergency, then expecting Tropical Storm Laura. Thereafter, as the impact was realized, the State of Emergency was modified and expanded for more than a month and a half.

Ultimately, the City of Winnfield was decimated. For a period lasting approximately a week the City was with limited, if any, power. Roads were impassable and littered with debris. Houses and roofs were severely damaged by fallen trees and some residents were trapped. Virtually all supplies for residents had to be transported and maintained in the municipality for an extended period of time. As evidenced by the invoices, basic necessities such as mobile showers, laundry, cold storage and fuel supplies had to be provided. Numerous bucket trucks and other debris clearing equipment were necessary to maintain, let alone restore, the city to functionality. Along with these supplies came the need for additional manpower. Not to overstate, but the infrastructure devastation rivaled Hurricane Katrina levels for a small, inexperienced, underprepared municipality such as Winnfield. Then Mayor George Moss and Public Works Director Johnathan Paul were in dire need of assistance.

Plaintiffs have routinely been in the business of disaster relief. Expecting the impact of the Storm to be severe somewhere in the State, Ty Bewley and the complainant corporations mobilized from their home state of Missouri. Bewley's plans originally placed them enroute to Alexandria - where he had been in contact with authorities. (ROA at 1618). Prior to arrival, the Storm struck, leaving Alexandria, Louisiana largely intact. As a result, the authorities in Alexandria placed

Bewley in contact with Jonathan Paul and Mayor George Moss of Winnfield to assist with their recovery. (ROA at 1618-9).

A valid, enforceable contractual agreement exists between the City of Winnfield and the subject entities. Mayor George Moss entered into a verbal contract on behalf of the City of Winnfield, which was later acknowledged via the emails attached to the City's Motion for Summary Judgment. (ROA at 1555). During the disaster, ongoing invoices were provided to Mayor Moss. (ROA at 1554-58). Ultimately, plaintiffs also offered assistance with any federal relief applications to ensure the City received all available funding in the process. The affidavits attached to the Motions by the current Mayor Gerald Hamms had no bearing on any agreements existing between his predecessor and Mr. Bewley's corporations. Mr. Hamms never has been, nor ever was, a party to the subject communications. Additionally, at the relevant times he lacked any authority to have acted in such authority.

The defendant was correct in his motion, bills were sent by the plaintiffs for over one million dollars for equipment, goods, services, and manpower to assist the city. (ROA at 1560). Appropriate charges were made for meals and expenses necessary to acquire, store, and preserve perishable items. Furthermore, appropriate charges were made to transport, house, and maintain manpower and equipment to the disaster area. Irrespective of this, the amount of these charges is not a matter

triable through the procedural vehicle before the court. This alone constitutes a genuine issue of material fact that would prevent summary judgment in this matter. It is however undisputed that no payment for any services rendered or expenses incurred has been made to date by the defendant.

**IV. SUMMARY OF ARGUMENT**

Following Hurricane Laura, the City of Winnfield received devastating damage as a result of the storm. The city, through its Mayor, sought the services of the plaintiff to conduct repairs following the storm. After the invoices were submitted, and after the city changed leadership, it decided to claim that it did not have a contract with the plaintiffs and refused any payment. The City of Winnfield seeks a strict application of the Lawrason Act and the Public Bid Law as well as a strict application of a requirement of a written contract. However, an extreme State of Disaster existed wherein these rules were significantly relaxed both statutorily and by Executive Order. Governor John Bel Edwards declared a state of Emergency suspending all requirements of the Public Bid Law. This allowed the Mayor to have broad authority to act to preserve the public safety of the citizens of Winnfield- and did so pursuant to the emergency executive powers granted to him in the Louisiana Homeland Security and Emergency Assistance and Disaster Act.

There is no question that a oral contract existed between the parties and one that was validly entered into by the defendant. Further, there are genuine issues of

material facts on these issues that would prohibit the court from granting summary judgment on this issue.

Furthermore, if the court does determine that there was no oral contract between the parties, the plaintiffs' are entitled under Louisiana law to bring a claim under the doctrine of unjust enrichment. This would also preclude summary judgment in this matter.

## V. ARGUMENT

### A. Standard of Review for Motion for Summary Judgment.

This court reviews a district court's grant of summary judgment . . . de novo." *Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149, 153 (5th Cir. 2024). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if a reasonable jury "could differ as to the import of the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). When assessing the record, this court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment." *Smith v. Reg'l Transit Auth*. 827 F.3d 412, 417 (5th Cir. 2016). It must be borne in mind that "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial." *Ford v. McKesson*, 2026 U.S. App. LEXIS 8179, *7-8, 2026 LX 184163, __ F.4th __, 2026 WL 772357.

**B. The City of Winnfield breached its contract with the plaintiffs.**

1. Genuine Issues of Material Fact precluded summary judgment.

In order for the trial court to grant the defendant's Motion for Summary Judgment, he had to ignore numerous genuine issues of material fact that would have precluded the court from granting the motion. In its attempt to present its case regarding no disputes as to the factual circumstances, the City presented more questions than answers. First, the affidavits attached to its Motion were the statements of the current Mayor, Gerald Hamms. (ROA at 1552). Mr. Hamms was not elected until March of 2022. Mayor Hamms was not, nor would he have been, party to any such communications at the relevant time periods in question. Furthermore, no affidavits were attached from either Mayor Moss or Jonathan Paul – the two individuals for the city who were directly involved in the matter.

As to the documents that were attached to the City's motion, of particular note is Exhibit B - emails between representatives of Poor Boy Tree Services, Inc. and Mobile Help 4 U, Inc. and Mayor Moss. (ROA at 1554). The second page of Exhibit B provides evidence of Mayor Moss' acknowledgment of the obligation, even going so far as to discuss the progress made toward receiving reimbursement from FEMA so that payment could be made to the plaintiffs. Despite requesting copies of any

applications for these funds in discovery, none were produced by the defendant. This begs the question, were any such applications filed in the first place? The fact that the city emailed the plaintiff to update them as to the status of receiving payments from FEMA establish the existence of a contract from the city's perspective.

2. Exceptions to Law that allowed an oral contract.

Exceptions exist that allow for oral contracts. The existence or lack thereof is not an issue to be decided by summary judgment. If the court had allowed this matter to proceed to trial on the Merits, all aspects of the issue of an oral contract could have been explored by the parties.

The City of Winnfield, without a doubt, was struck by a devastating storm with the impact of Hurricane Laura. Now, it seeks to shirk responsibility it owes for the work performed by the plaintiffs herein after the storm. The pivotal issues for this Court to consider are the legal ramifications that Governor John Bel Edwards' Emergency Proclamations had on the law as stated by the City of Winnfield in its motion. In fact, not once are these proclamations, or the exceptions within the laws cited, addressed as they apply to the issues sub bar.

In summary, Governor Edwards issued a series of Proclamations in advance of and following the landfall of Hurricane Laura. These started with 108 JBE 2020 on August 21, 2020. (ROA at 1597). This order effectively mobilized the Governor's Office of Homeland Security and Preparedness. Thereafter, several orders followed

including 115 JBE 2020, 124 JBE 2020, 166 JBE 2020, and others extending relief to the year of 2022 and beyond. (ROA at 1599). During this time President Donald J. Trump also issued a Federal Determination of a Major Disaster Declaration for Winn Parish.

Beginning with 115 JBE 2020, the provisions of the public bid law, upon which the City of Winnfield relies to deny the existence of a contract, were suspended effective August 27, 2024. Specifically,

Governor Edwards endorsed:

> Pursuant to La. R.S. 29:724(D)(l), the Louisiana Procurement Code (La. R.S. 39:1551, et seq.) and Louisiana Public Bid Law (La. R.S. 38:2211, et seq.) and their corresponding rules and regulations are hereby suspended for the purpose of the procurement of any good or services necessary to respond to this emergency, including emergency contracts, cooperative endeavor agreements, and any other emergency amendments to existing contracts.

This relief extended throughout the time period alleged in this matter. The City specifically relied on the La. R.S. 38:2212, despite its suspension. Additionally, further reading of this article specifically contemplates the existence of an extreme public emergency which would othe1wise dissolve some of the provisions of the public bid law as set forth in Subsection "P" of this same article.

3. Proof of the Oral Contract

The question before the trial court was whether the invoices and written communications as a whole constitute a written contract. Complainants must

concede that the contract in question is not a formal written, signed agreement. In the present case, written invoices were sent following work requested by Mayor Moss. Thereafter, Mayor Moss acknowledged receipt of the request for payment, did not dispute the charges, and gave assurance that payment was forthcoming. In order to have a valid contract, or conventional obligation under Louisiana Law, the parties must have capacity, they must consent, there must be a cause for the relationship, there must be a defined object and if, applicable, a price. In the present case, a genuine issue of material fact exists as to consent. Furthermore, the question of contractual capacity exists as a matter of law.

To support its contention of a lack of consent, the City offers the affidavit of its current Mayor. However, Mayor Hamms has no actual knowledge of the matters that occurred in August and September of 2020. Inversely, Ty Bewley was an actual party to all matters herein. (ROA at 1618). Additionally, the emails and communications in question would be able to be sufficiently proven at trial of this matter and show the existence of the oral contract between the parties.

The question before this Court, as it was before the trial court, is whether an oral contract such as the one in question is allowed under the present emergent circumstances? Complainants urge that this is precisely the type of contract, specifically oral contract, that the Mayor has pursuant to his emergency executive powers. The Louisiana Homeland Security and Emergency Assistance and Disaster

Act covers this topic. Louisiana Revised Statue 29:737 contemplates such actions being necessary to preserve public safety and peace. This article considers a disaster such as Hurricane Laura, providing, in part:

> "whenever a situation develops within or outside of a municipality which the chief executive officer of the municipality determines requires immediate action to preserve the public peace, property, health, or safety within the municipality or to provide for continued operation of municipal government, nothing in this Chapter shall diminish the authority of the chief executive officer of the municipality to undertake immediate emergency response measures within the municipality to preserve the public peace, property, health, or safety within the municipality or to provide for continued operation of the municipal government."

Just such an action occurred here. Widespread devastation occurred. The municipality lacked water, power, and a stable food and fuel supply for days on end. Mayor Moss exerted his emergency executive powers to do precisely what the statute contemplates through the seeking of Complainant's emergency services.

The city certainly had authority to enter an oral contract under the present circumstances. The City of Winfield seeks this Honorable Court to apply strict construction of the Lawrason Act citing several instances wherein oral contracts were disallowed. None of these concern contracts for emergency services such as the one before the court. Each considers the purchase of land and/or the purchase of radios.

The City of Winnfield relies on the case of *Smith v. Vinton*, 20 La. 587 (1946). This case does not support the contentions of the defendant. Here, a contractor made

certain repairs to the electrical system of the municipality. Said repairs were without a resolution of the legislative authority and approved only by the mayor. Notwithstanding this, Smith still prevailed as the council was aware of the work being performed and raised no objection. The exceptions were overruled and the matter was allowed to proceed to trial. Similar facts may be elicited in the present case. Likewise, the theory of tacit acceptance of a contract entered into by the mayor was recognized in *Sunray Servs., Inc. V. City of Minden*, 690 So. 2d 970 (La. App. 2 Cir. 2/28/1997). In that case, a certain sanitation contract was terminated without authority by the Mayor. No vote was taken to ratify the contract; however, action was taken to pursue other avenues. The Court found that inaction by the council on the issue with the council's knowledge of the act constituted tacit acceptance. The Board of Alderman, of which Mayor Hamm was previously a member, has taken actions to specifically deny mayoral authority since filing of this suit. No evidence has been presented of express denial of Mayor Moss's authority by the Board of Alderman of the Town of Winnfield. If this matter were to proceed to trial evidence will show that Mayor Hamm has in fact sought non-emergency contracts through the placing of a bid on certain property. Upon his attempt to seek ratification of this action, the Board of Aldermen expressly rejected his attempt. In this same meeting, the debt at issue in this suit was mentioned by the Board.

Next, the City of Winnfield attempts to rely on *Daspit v. City of Alexandria* 342 So. 2d 683 (La. App. 3d Cir. 1977). This too fails to support their position. In that case, the Mayor, acting alone, entered into a contract to utilize a private landowner's land for a landfill. The legislative body had no knowledge of the contract as it was stored in the mayor's private files. A landfill was operated for a period then operations were discontinued. Nonetheless, judgment was still awarded in favor of the plaintiff under the theory of unjust enrichment through the City's utilization of the land with no compensation. However, yet again, this does not consider the emergency powers of the Mayor. Furthermore, no facts are alleged of a secret contract between Poor Boy Tree Services, Inc. or Mobile Help 4 U, Inc. and the City of Winnfield.

Lastly, the city cited *Bell v. City of Lake Charles* 218 So.3d. 190 (La. App 3 Cir. 4/19/17). This too is not factually analogous to the present circumstances. That case considered the termination of a law enforcement officer. The Mayor terminated the officer in question, and the Civil Service Board ratified the termination. No such facts exist in the present case. Rather, a discussion of the mayor's acting in "good faith" is largely the focus of that civil service appeal. Yet again, no issue of a declaration of emergency is present.

The city also cites alleged violations of the Public Bid Law under La. R.S. 38: 2212. The very act cited by the City of Winnfield provides for oral contracts in

emergent circumstances such as these. Although caselaw on the issue is sparse, Subsection "P" was enacted by the Louisiana Legislature in contemplation of this very principle. Subsection P addresses extreme public emergencies such as the aftermath of Hurricane Laura. Within this section, La. R.S. 38:2212 P(2)(b) reads in part, "When contract action under this authority is taken pursuant to telephone or other oral offers, a written confirmation of the accepted offer shall be obtained and made a part of the contract case file."

Considering this, the oral offers are certainly allowable under the Public Bid Law in emergent circumstances. The general provisions of the Lawrason act are hence superseded by the more specific statutory language.

As stated above, the city contends that the Mayor cannot enter into a contract acting alone. Poor Boy Tree Services, Inc. agrees this is generally the case of a Lawrason Act municipality. However, as previously stated ad nauseum, exceptions exist within the Mayor's emergency powers under Louisiana Homeland Security and Emergency Assistance and Disaster Act. The same oral provisions are considered within the emergency subsection of the Public Bid Law cited by movant. Having defeated respondent's contention that Mayor Moss lacked authority and that oral contracts are not allowed, proof certainly exists of the contractual agreement.

The proof to be shown at trial is as simple as this: Ty Bewley and Mayor Moss had communications in which goods, equipment, and services were to be provided

for a certain price. During the state of emergency Mayor Moss had actual and apparent authority to contract these items. Mr. Bewley provided these items on credit to the City of Winnfield, to his detriment. As a result, the City of Winnfield, a municipality of just over four thousand people, received much needed help. The City of Winnfield now wishes to absolve itself of any responsibility for these services which included a mobile laundry, showers, generators, ten passenger trucks, ten bucket trucks, four debris trucks, four skid steers, grapples, mobile housing, and food services. To suggest that the testimony of Ty Bewley, Mayor Moss, and other witnesses, as well as proof of delivery of these services is insufficient to prove the existence of an oral contract is preposterous. The suggestion that this magnitude of manpower descended upon a small municipality with no knowledge or direction from the Mayor and no agreement was reached is a disingenuous position to maintain before this Court.

4. <u>Open Account</u>

Lastly, the City argued that the invoices in question do not qualify as an open account - the basis under which the suit was filed. The issue for which they seek determination is subjective in nature and fraught with genuine issues of material fact. Utilizing the tests set forth under *Precision Cooling* and *Cambridge Toxicology*

*Group*,[1] the exact inverse could be found. Analyzing them in order, the business dealings between the corporations and the City of Winnfield were wide-ranging in nature. Had these transactions been limited to one specific sector of disaster relief, a limited scope of the interaction could be inferred. For instance, if the transaction were limited to one request for bucket trucks, a single business transaction is implied. However, here, multiple facets of business transactions and services were provided. Power generation, fuel delivery, debris clearing, and housing solutions were delivered - each upon the request of the City of Winnfield. A constant dialog of, "Can you get this?" occurred during the Corporations' time in Winn Parish. It is without question that a line of credit was extended by Mobile Help 4 U, Inc. and Poor Boy Tree Services, Inc. in the favor of the City of Winnfield. Next, the question presented as to whether there are running or current dealings. Currently, no dealings exist between the parties. However, a running tableau of dealings did exist at the time between the parties. Lastly, the subject of an expectation of further dealings is again subjective. If the account was current, and if further disaster services were required by the City, certainly further dealings would be undertaken.

Looking to the *Cambridge Toxicology* test, an ongoing relationship of extension of credit certainly existed. Albeit for a short period, services were

[1] *Precision Cooling Towers Inc. v. Indorama Ventures*, 2022 U.S. Dist. Lexis 66341; *Cambridge Toxicology Group v Exnicios*, 495 F.3d 169 (5th Cir. 2007).

extended to the City of Winnfield on a credit basis. As evidenced by the affidavit of Ty Bewley, a status of the account was delivered to the Mayor prior to the final invoice. The representation that this was not an ongoing transaction is simply not the case.

**C. Unjust Enrichment is a valid theory of recovery for plaintiffs.**

If there is no contract between the parties, then Unjust Enrichment is certainly an alternative avenue available to plaintiffs in the instant matter. As the trial court noted during arguments, "there is no disputing they did the work", the city clearly benefited but yet has offered no compensation for even plaintiffs' costs in the matter before the Court. If no other theory of recovery exists for the plaintiffs through the alleged nonexistence of a contract, as the City of Winnfield contends, the theory of unjust enrichment can be invoked by the plaintiffs.

Louisiana Civil Code article 2298 governs the issue of unjust enrichment. Specifically, the article defines the cause of action as subsidiary, in that it is only available if there is no other legal remedy available. To prevail, the claimant must prove 1) enrichment of the defendant, 2) impoverishment of the plaintiff, and 3) no cause for the enrichment. Presently, the City, despite receiving services, alleges, among other things, that there was no contract between the parties and that the transaction did not meet the definition of an open account. If the court adopts these theories, as the trial court did by granting the motion for summary judgment, then

unjust enrichment squarely applies. If the City of Winnfield's position is maintained, no legal theory of recovery for the sums expended was ever available to the Plaintiffs, leaving unjust enrichment as its only avenue.

In its ruling, the trial court found that there was no contract, and then denied the plaintiffs' claim for unjust enrichment, holding that "no other remedy" does not mean that unjust enrichment is available whenever a party fails to prevail under their asserted claims. Thus, because the plaintiffs' plead a cause of action under contract, unsuccessfully, they are not entitled to make a claim for unjust enrichment.

This makes absolutely no sense and is a misstatement of Louisiana law.

Article 2298 states that the remedy is not available "if the law provides another remedy" for the impoverishment. If the plaintiff's had prevailed on their breach of contract claim, then they would have had "another remedy." It does not mean that if a party pleads a cause of action, any cause of action no matter how weak, then they are not entitled to unjust enrichment. That would mean that no one would have access to this remedy. What if the plaintiff's herein had claimed a cause of action under tort, claiming that the city had a duty owed to them? And, if it was dismissed, they no longer have a cause of action for unjust enrichment, because their first cause of action failed? That makes no sense whatsoever. Or, could it be a defense to a claim for unjust enrichment? The defendant can claim that the plaintiff

should try to sue them in contract, then deny the contract, and now there is no longer a claim for unjust enrichment? None of it makes sense.

In *Gilstrap v. Cross Realty, Inc*., 2025 La. App. LEXIS 2547, (La. App. 5 Cir. 12/23/2025), the Louisiana Fifth Circuit denied a claim for breach of contract, and then allowed the plaintiff to pursue a claim for unjust enrichment. In Gilstrap, the plaintiff brought a claim for breach of contract for renovations of the defendant's properties based on a verbal agreement. The court dismissed the claims for breach of contract. However, the court then allowed the plaintiff to pursue a claim for unjust enrichment. The court stated:

> Once the district court determined that no contract existed and granted summary judgment on that issue, the unjust enrichment claim became Gilstrap's only recourse.

*Gilstrap v. Cross Realty, Inc.*, 2025 La. App. LEXIS 2547. These are the exact same facts as our case. Once the trial court held that there was no contract, he should have allowed the plaintiff's to pursue a claim for unjust enrichment.

The City of Winnfield seeks to invalidate the contract and nullify any legal method of recovery through its Motion for Summmy Judgment. Specifically, it raised the issue of authority in the current mayor's affidavit which alleged a lack of authority to act on behalf of the City. The plaintiffs contend that authority did in fact exist through implied or apparent authority of city actors; however, this is before the court in the principal issues. As noted at hearing, no depositions have been held. As

such, the issue of unjust enrichment developed through the City's filing of its Motion for Summary Judgment. As the Court noted, if the City is to prevail under its theory, how else are the plaintiff entities to be made whole? The notion that no repercussions or reimbursement is owed for services rendered such as these is a slippery slope. What keeps any public entity from making the same allegations in order to shirk payment of duly owed compensation to contractors?

Before the court squarely lies the issue of whether the amendment of the complaint to assert unjust enrichment will unduly delay the proceedings. Of additional concern is the issue of implied authority as noted by the Court. Plaintiffs submit that, if leave is given, the facts surrounding these issues do not change or greatly alter the scope of discovery. The only additional issues to explore under implied authority or unjust enrichment concern the impressions of the actors and compensation and cost analysis. As such, the delay to trial associated with the proposed amendment would be minimal. Very minimal discovery would be needed to fully develop these issues. Plaintiffs do not submit that the defendant's motion for Summary Judgement should be granted and maintain that genuine issues of material fact do in fact exist. Additionally, the law does not support the City of Winnfield's position on the public bid law. Even considering this, Poor Boy Tree Services and Mobile Help 4 U submit that the most efficient administration of this case would be to deny the Motion for Summary Judgment, grant leave for amendment, and re-open

discovery for an abbreviated period so that the matter can proceed to trial, if necessary, without substantial delay.

Federal courts have considered the very issue of this course of action at similar stages in other proceedings. In order for this theory to prevail for the Plaintiffs, it must fall under Federal Rule of Civil Procedure 41(a)(2) and be a voluntary motion for dismissal. At this point, the Court would be tasked with analyzing whether a dismissal without prejudice would result in plain legal prejudice to the defendant. In making this determination, a balancing test is utilized. The test is outlined as follows:

> In evaluating plain legal prejudice, this Court is to consider: "(l) the defendant's effort and expense of preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) the plaintiff's insufficient explanation for the need to take a dismissal; and (4) whether the defendant has filed a motion for summary judgment."

*Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988).

While the Fifth Circuit has analyzed the issue as well, the Southern District of Ohio was faced with a nearly identical scenario in *Frechette v. Health Recovery Servs., Inc.*, 2024 U.S. Dist. LEXIS 50371, at *I (S.D. Ohio Mar. 21, 2024). The Frechette court was faced with a case wherein a motion for voluntary dismissal was presented following the filing of a Motion for Summary Judgment. In analyzing the remainder of the issues, the court noted that minimal discovery had been conducted, and that much of the work would be re-utilized in the forthcoming suit if dismissed without prejudice. In analyzing the delay, the Court opined that the suit, filed in 2019

and before it in 2024 was not the result of substantial delay. Dismissal was sought promptly following the denial of a class certification; therefore the court considered it contemporaneous. Ultimately, the Court granted the plaintiff's motion for involuntary dismissal without prejudice.

In the present case, many similar factual scenarios apply. Minimal discovery has been conducted by both parties. This case has not been unduly delayed and is in fact of a shorter duration than *Frechette*, having been filed in 2021. The only delay that the undersigned can recall is a joint motion to extend certain discovery deadlines, which was denied by this Honorable Court. As briefed herein, any such request, if sought, is justified and a sufficient explanation exists. If sought, Federal Rule of Civil Procedure even allows the Court to place additional conditions upon dismissals as necessary. As such, while the more tenuous of the options presented by the Court, an avenue does exist under a motion for voluntary dismissal.

## VI. CONCLUSION AND RELIEF SOUGHT

City of Winnfield seeks a strict application of the Lawrason Act and the Public Bid Law. Furthermore, the City seeks strict application of a requirement of a written contract. No consideration is given to the fact that the City of Winnfield was in utter turmoil and chaos. An extreme State of Disaster existed wherein these rules were significantly relaxed both statutorily and by Executive Order.

As stated herein, Governor John Bel Edwards declared a state of Emergency suspending all requirements of the Public Bid Law. Furthermore, the same public bid law afforded provisions for verbal bids in emergency situations such as this - in direct contradiction to the assertions of the City of Winnfield. The Mayor was further given broad authority to act to preserve the public safety of the citizens of Winnfield- and did so pursuant to the emergency executive powers granted to him in the Louisiana Homeland Security and Emergency Assistance and Disaster Act. No allegation has been made that the Board of Alderman was unaware of the work performed, or that the Board of Alderman took steps to expressly prohibit or condemn the work. However, in other instances where the Mayor has exceeded his authority, the Board has not hesitated to step in. There is no question that a oral contract existed between the parties and one that was validly entered into by the defendant. Further, there are genuine issues of material facts on these issues that would prohibit the court from granting summary judgment on this issue.

Mr. Bewley and his corporations extended these services to the City of Winnfield in good faith on a credit basis, expecting payment at a minimum once reimbursement was received. This advancement of goods and services has thus far proven to be to his and his corporations' detriment. Inversely, the City of Winnfield experienced a windfall, unjustly enriching them for the free repairs performed by out-of-state contractors.

In the alternative, if the court does determine that no contract existed between the parties, then the plaintiffs are entitled under Louisiana law to bring a claim under the doctrine of unjust enrichment.

This court should conduct a de novo review of this matter and reverse the trial court's order that granted the summary judgment. Or, the court should remand this matter back to the trial court to allow the plaintiff to pursue their claim for unjust enrichment.

Respectfully Submitted,

CHRISTIANSEN LAW FIRM
2483 Tower Drive, Suite 2
Monroe, LA 71201
T: 318-807-0929 / F: 318-809-0926
E: **jpchris@christiansenlawfirm.net**

***/s/ Jan P. Christiansen***
Jan P. Christiansen, #20124

LAW OFFICES OF CHRIS BOWMAN
330 East Main Street
Post Office Box 190
Jonesboro, LA 71251
T: 318-259-6200 / F: 318-259-7389
E: **colby@bowman.law**

***/s/ Colby L. Bowman***
Attorney for Plaintiffs/Appellees,
Poor Boy Tree Service, Inc. and
Mobile Help 4U, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent electronically to all counsel/parties of record by operation of the Court' s CM/ECF system.

Signed in Monroe, Louisiana on this 6th day of April, 2026.

***/s/ Jan P. Christiansen***

***/s/ Colby L. Bowman***

**Jan P. Christiansen**
**Colby L. Bowman**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B):

   - This brief contains 6599 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   - This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font as permitted by Fifth Circuit Rule 32.1.

Dated: April 6, 2026

***/s/ Jan P. Christiansen***

***/s/ Colby L. Bowman***

**Jan P. Christiansen**
**Colby L. Bowman**